# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **KEVIN BRADLEY HARVILLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:11-CV-3619-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION[1]

Plaintiff Kevin Bradley Harville ("Mr. Harville") brings this action under 42 U.S.C. § 405(g) (2006), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits

---

[1] The court recently became aware that Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on Mar. 13, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2]  Mr. Harville timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Harville was fifty-one years old at the time of his hearing before the Administrative Law Judge ("ALJ").  (*See* Tr. 82).  He has passed the General Educational Development (GED) test.  (Tr. 103).  His past work experiences include employment as a roofer and sheet rock installer.  (Tr. 100).  He claims he became disabled on May 14, 2008, due to Hepatitis C, depression, sleep disorder, diabetes, and skin cancer.  (Tr. 99).  His last period of work ended on March 10, 2007.  (*Id.*).

On May 15, 2008, Mr. Harville protectively filed a Title II application for a period of disability and DIB.  (Tr. 17).  He also protectively filed a Title XVI application for SSI on that date.  (*Id.*).  On November 12, 2008, the Commissioner initially denied these claims.  (*Id.*).  Mr. Harville timely filed a written request for a hearing on December 16, 2008.  (*Id.*).  The ALJ conducted a hearing on the matter on

─────────────────────

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

February 9, 2010.  (*Id.*).  On March 4, 2010, he issued his opinion concluding Mr. Harville was not disabled and denying him benefits.  (Tr. 29).  Mr. Harville timely petitioned the Appeals Council to review the decision on April 1, 2010. (Tr. 13).  On August 12, 2011, the Appeals Council issued a denial of review on his claim.  (Tr. 1-3).

Mr. Harville filed a Complaint with this court on October 12, 2011, seeking review of the Commissioner's determination. (Doc. 1).  With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

impairment" which "must result from anatomical, physiological, or psychological

abnormalities which can be shown by medically acceptable clinical and laboratory

diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in

sequence:

> (1)    whether the claimant is currently employed;
> (2)    whether the claimant has a severe impairment;
> (3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4)    whether the claimant can perform his or her past work; and
> (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable

C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-

63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy

in significant numbers.  *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ here found that Mr. Harville met the insured status requirements of the Social Security Act through December 31, 2008. (Tr. 19).  He also found that Mr. Harville had not engaged in substantial gainful activity since May 14, 2008, the alleged onset date of his disability. (*Id.*).  He further concluded that Mr. Harville had the following severe impairments: degenerative disease of the right hip, diabetes mellitus, obstructive sleep apnea, depression, adjustment disorder, chronic obstructive pulmonary disease, and right hand numbness from his forearm to his fingertips.  (*Id.*). The ALJ then held that these medically determinable impairments, in combination, did not meet or medically equal one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations.  (Tr. 20).

After considering the entire record, the ALJ found that Mr. Harville had the residual functional capacity to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  (Tr. 22).  The ALJ then found that Mr. Harville could not perform any of his past relevant work. (Tr. 27).  He further determined that Mr. Harville was 50 years old, had at least a high school education, and was able to communicate in English. (Tr. 28).  He noted that the transferability of job skills was not material to his determination of Mr. Harville's eligibility because using the

Medical-Vocational Rules as a framework supported a finding that Mr. Harville was not disabled, regardless of whether he had transferable job skills. (*Id.*).

Considering Mr. Harville's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Mr. Harville could perform. (*Id.*). In reaching this conclusion, he relied on a vocational expert, Mr. James Hare. (*Id.*). Mr. Hare testified that, given all of the stated factors, an individual in Mr. Harville's position would be able to perform the requirements of representative occupations such as cashier, production assembler, dog bather, and hand packager. (Tr. 28-29). Mr. Hare further vouched that available jobs for such positions existed in significant numbers in both the region and across the nation. (*Id.*). Based on this assessment and on the entire record, the ALJ found that Mr. Harville was not disabled between May 14, 2008, through March 4, 2010, the date of the decision. (Tr. 29). He thus dismissed his applications for DIB and SSI benefits. (*Id.*).

## ANALYSIS

### I.    INTRODUCTION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial

evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]   However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Harville urges this court to reverse the Commissioner's decision to deny him benefits on the following grounds: (1) the ALJ's finding that he could perform light work was not based on substantial evidence; (2) if he were limited to sedentary work, there would be no jobs that he could perform because of the injury to his right hand; (3) if he were limited to sedentary work, the Medical Vocational Guidelines would have mandated a finding that he was disabled.  (Doc. 9 at 10).  The court notes at the outset that it may only address the first of these objections under its present jurisdiction.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (holding that a reviewing court may only reverse Commissioner's decision when persuaded it was not supported by substantial evidence or that proper legal standards were not applied) (citation omitted).  In response to Mr. Harville, the Commissioner asks the court to uphold the ALJ's decision on the grounds that it was supported by substantial evidence and that the ALJ applied the correct legal standards in reaching it.  (Doc. 10

---

[5]*Strickland* is binding precedent in this Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

at 14-24).  The court finds the Commissioner's arguments persuasive and sufficient to affirm the decision.

## II.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT.

Substantial evidence supports the ALJ's determination that Mr. Harville had the residual functional capacity ("RFC") to perform light work.  The RFC is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his or her impairments.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  A claimant's RFC – along with his or her age, education, and work experience – is considered in determining whether the claimant can work.  *Id.* (citing 20 C.F.R. § 404.1520(f)).  The claimant is ultimately responsible for providing the evidence used by the ALJ in making this determination.  20 C.F.R. § 404.1545(a)(3) (citing 20 C.F.R. § 404.1512(c)).

In discussing the "light work" that Mr. Harville could still perform despite his impairments, the ALJ here concluded that he could:

- Understand, remember, and carry out short, but not detailed, instructions;
- Maintain attention and concentration for up to two hours at a time in an eight hour work day;
- Be exposed to general contact with the general public;
- Accept and handle ordinary criticism;
- Deal with co–workers and supervisors;
- Handle gradual changes in the work setting;

- Occasionally lift, carry, push, or pull up to twenty pounds;
- Frequently lift, carry, push, or pull up to ten pounds;
- Stand and/or walk up to six hours in an eight hour work day; and
- Sit up to six hours in an eight hour work day.

(Tr. 22). He added the following limitations: "[Mr. Harville] should avoid climbing ladders, ropes or scaffolding; frequently climbing ramps or stairs; stooping; crawling; dangerous machinery; unprotected heights; and, concentrated exposure to extremes of temperature." (*Id.*). He drew this conclusion on three primary bases: (1) he afforded "substantial weight" to the findings of Mr. Harville's examining doctors, Mary Arnold, Psy.D., and Ryan Aaron, M.D; (2) he assigned similar weight to those of the State Agency medical advisers and the State medical consultant; and (3) he discredited Mr. Harville's subjective description of the limitations his various impairments placed on his functional capacity. (Tr. 23, 26-27). The ALJ applied appropriate legal standards in making each of these subordinate decisions. When considered together, they qualify as "substantial evidence" in favor of his RFC finding.

## A.   Examining Physicians

The ALJ rightly gave substantial weight to the opinions of Drs. Aaron and Arnold. The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960,

962 (11th Cir. 1985) (per curiam) (citation omitted).  However, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted).  In this case, Dr. Aaron physically examined Mr. Harville in October 2008 at the request of the Social Security Administration. (Tr. 25).  The ALJ highlighted Dr. Aaron's following observations at that meeting:

- Mr. Harville reported that he could sweep, do the dishes, tie and untie his shoelaces, and button and unbutton his clothing.
- He did not demonstrate any pain behaviors, was able to hold a pen without difficulty, write his name, respond to questions and commands appropriately, ambulate independently, and perform transfer independently.
- He had full range of motion in his cervical and lumbar spines, with no noted tenderness to palpation.
- He had full range of motion in his upper and lower extremities bilaterally – with the exception of his right hand fifth digit – and was able to heel, toe, and tandem walk.
- His grip was 5/5 bilaterally in both his upper and lower extremities.
- Although he complained of bilateral hip pain, Dr. Aaron noted no athropy, erythema, warmth, crepitus, or edema.

(*Id.*).  At the end of the examination, Dr. Aaron diagnosed Mr. Harville with Hepatitis C and sleep apnea.  (*Id.*).  On November 14, 2008, again at the request of the Social Security Administration, Dr. Arnold psychologically examined Mr. Harville.  (*Id.*). She in turn made the following observations that the ALJ found relevant:

- Mr. Harville reported that he washed a few dishes, did his own laundry, and dressed and groomed himself independently.

11

- His mood was broad.  He was alert and orientated, and he had a good fund of knowledge.
- He was cleanly dressed with an outgoing demeanor and conventional behavior.
- His gait, gesturing, and posture were unimpaired.
- He used his right hand to grasp his medication bottle, with the only abnormal feature being an arched pinkie finger.

(Tr. 26).  She diagnosed Mr. Harville with cannabis abuse (partial remission), nicotine dependence, opiate dependence, and an adjustment disorder.  She also assigned him a Global Assessment of Functioning Score of 58.  (*Id.*).

The ALJ substantially weighted these findings because they were "based upon direct observation and examination of the claimant." (*Id.*).  Both physicians also "had the opportunity to review [Mr. Harville's] entire medical history, and thus have a greater longitudinal basis for their decisions." (*Id.*).  Last, the findings were "internally consistent as well as consistent with the evidence as a whole." (Tr. 27).  Mr. Harville does not provide any evidence or arguments to undermine these observations.  The court therefore agrees that they justify the weight that the ALJ ultimately imputed to the doctors' respective evaluations.

### B.    Non-Examining Physicians

The ALJ also permissibly gave substantial weight to the assessments of the State Agency medical personnel.  On November 10, 2008, Larry Dennis, PhD, a State medical consultant, reviewed Mr. Harville's entire medical history.  (Tr. 25).  He

concluded that Mr. Harville had only "moderate" limitations in his ability to:

- Understand, remember, and carry out detailed instructions.
- Maintain attention and concentration for extended periods of time.
- Complete a normal eight hour work day and work week without interruptions from psychologically based symptoms.
- Interact appropriately with the general public.
- Accept instructions and respond appropriately to criticism from supervisors.
- Respond appropriately to changes in the work setting.

(*Id.*).  In turn, Dr. Dennis opined that Mr. Harville was capable of:

- Understanding, remembering, and carrying out short, simple instructions.
- Attending to simple tasks for at least two hours at a time in an eight-hour workday.
- Handling casual contact with the general public.
- Accepting non-confrontational criticism.
- Dealing with infrequent and gradual changes in the work setting.

(*Id.*).  He further found that Mr. Harville "exhibited only mild limitations with his ability to perform activities of daily living, while he found moderate limitations in his ability to maintain social functioning, concentration, persistence and pace."  (*Id.*).

Additionally, on November 12, 2008, Jackie Barrow, a State single decision-maker, rated Mr. Harville's physical capacity.  (Tr. 313).  She considered both Mr. Harville's subjective complaints and the "overall objective findings of record."  (Tr. 25).  She found him:

- Capable of occasionally lifting and carrying up to twenty pounds.
- Frequently lifting and carrying up to ten pounds.

- Standing and/or walking up to six hours in an eight hour workday.
- Sitting up to six hours in an eight hour workday.
- Unlimited in his ability to push or pull with both his upper and lower extremities.

(*Id.*).  However, she did find Mr. Harville precluded from ever having to climb ladders, ropes, or scaffolding; he also could not be exposed to extremes of heat and cold.  (*Id.*).

The ALJ lent Dr. Dennis and Ms. Barrow "substantial weight" because they provided specific reasons for their opinions.  (Tr. 27).  This revealed that their assessments were "grounded in the evidence of record."  (*Id.*).  Their findings were also "internally consistent and consistent with the evidence of record."  (*Id.*).  As noted, a non-examining physician's opinion is generally entitled to less weight than that of an examining physician.  *Broughton*, 776 F.2d at 961 (citation omitted).  The ALJ here instead gave Dr. Dennis's and Ms. Barrow's opinions equivalent weight to those of Drs. Aaron and Arnold.  That is, he found their various opinions consistent with one another and equally supported by the record.  Mr. Harville does not cite any law suggesting that an ALJ may not apportion evidentiary weight in such a manner.  The court therefore finds that the ALJ justifiably afforded "substantial" weight to the opinions of Mr. Harville's non-examining physicians.

## C.   Subjective Complaints

Last, the ALJ correctly discredited Mr. Harville's description of the incapacitating effects of his impairments. If a claimant proves that he or she has an impairment that could reasonably be expected to produce his or her alleged symptoms, then the ALJ must evaluate the intensity and persistence of such symptoms and their affect on his or her ability to work. *Foote*, 67 F.3d at 1561. In doing so, the ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(2)-(4), 416.929(c)(2)-(4). If the ALJ wishes to make a credibility determination, then the ALJ "must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (citation omitted). Substantial evidence must support the reasons given for discrediting such testimony. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

The ALJ here found that Mr. Harville's statements on the intensity, persistence, and limiting effects of his impairment symptoms were not credible. (Tr. 23). The ALJ was meticulous in articulating why he found the testimony unconvincing. He ably summarized its discrepancies in the following manner:

While there is some evidence of degenerative changes in the claimant's right

15

hip, diabetes, hepatitis C, moderate depression, adjustment disorder, mild sleep apnea, COPD and right hand numbness, [Mr. Harville] does not have any injuries of a catastrophic or disabling nature.  The claimant has successfully completed treatment for the hepatitis C infection and suffers no residuals from the disease process.  He has not undergone any surgical correction, nor does it appear that he has ever been advised that he requires surgery for any of his conditions.  No neurological problems, or problems with gait or muscle strength, have been noted on any physical examination.  No doctor or treating source has opined that the claimant is incapacitated.

Although the claimant has received treatment for the allegedly disabling impairments, the treatment has been essentially routine and/or conservative in nature.  On several occasions, the claimant was found to have had no opiates in his system despite having been continuously and regularly prescribed narcotics.  The claimant's apparent failure to take the narcotics in question as prescribed suggests that his pain is not as disabling as he alleges.  Furthermore, his pain contract was terminated due to this violation and his pain medications were ceased.  Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor.  Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

As it is, the claimant's allegation of disability is simply disproportionate to what the medical record demonstrates.  Because of the combined effects of his multiple impairments, it is reasonable to limit the claimant's exertions to what is expected at the "light" level of work.

(Tr. 27).  In her brief before the Court, the Commissioner noted some further inconsistencies in Mr. Harville's testimony.  For instance, when he received a chest x-ray on his visit to the emergency room on July 16, 2009, the x-ray revealed that his lungs were clear and without infiltrates.  (Tr. 356, 364).  Additionally, when he had a pulmonary function test on November 23, 2009, it showed that he had normal lung

volumes with only a mild reduction in diffusion.  (Tr.  433, 691).

In summary, the ALJ applied the proper legal standards in discrediting Mr. Harville's subjective complaints, and substantial evidence supports the reasons he enumerated for doing so.  In drawing the conclusion that Mr. Harville's testimony insufficiently illustrated a disability, the ALJ provided "such relevant evidence as a reasonable person would accept as adequate" to agree with him.  *Bloodsworth*, 703 F.2d at 1239.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner applied proper legal standards in reaching her final decision and that substantial evidence supported her findings in reaching this determination.  Accordingly, the decision will be affirmed by separate order.

**DONE** and **ORDERED** this 29[h] day of March, 2013.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

17